Filed 7/23/21  P. v. Hayes CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B302258 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. A561490-01 |
| MICHAEL WAYNE HAYES, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Dorothy L. Shubin, Judge.  Reversed and remanded with directions.

Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee, Amanda Lopez and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

Michael Wayne Hayes appeals from the superior court's order denying his petition under Penal Code section 1170.95.[1] That statute allows certain defendants convicted of murder under the felony-murder rule or the natural and probable consequences doctrine—and who were not the actual killer—to petition the court to vacate their convictions and for resentencing. The superior court summarily denied Hayes's petition without appointing counsel. Quoting from the opinion on direct appeal affirming Hayes's conviction, the court stated Hayes was the actual killer. The court further ruled that Hayes "was also a major participant in the robbery of the victim and acted with reckless indifference to human life."

Because the record on appeal does not establish that Hayes is indisputably ineligible for relief as a matter of law, we reverse. We remand the matter with directions to appoint counsel for Hayes, issue an order to show cause, and proceed in accordance with section 1170.95, subdivision (d).

## FACTS AND PROCEDURAL BACKGROUND

1. ***Hayes's conviction, his two petitions for resentencing, and the trial court's ruling***

In 1981, the People charged Hayes—along with Daniel Lee George and Randall Eugene Ellis—with the robbery and murder of David Ainsley Smith. The People alleged Hayes committed the murder for financial gain, and all three defendants committed the murder while engaged in the commission of robbery. The People also alleged that a principal was armed with a firearm in the commission of the crimes, and that Hayes personally used

---

[1]     References to statutes are to the Penal Code unless otherwise noted.

2

a firearm.  On the robbery count, the People alleged Hayes personally inflicted great bodily injury on the victim.

In January 1983, a jury convicted Hayes of first degree murder and robbery, and found the special circumstance allegations true.  The jury also found true the allegation that a principal was armed with a firearm.  However, the jury was unable to reach a verdict on the allegations that Hayes personally used a firearm and inflicted great bodily injury on the victim.  The court declared a mistrial on those enhancements.  At the conclusion of the penalty phase, the jury fixed the penalty on the murder count at life in prison without the possibility of parole.

In July 1983 the trial court sentenced Hayes in accordance with the jury's verdict to life without parole plus one year for the principal-armed enhancement.  On the robbery count, the court sentenced Hayes to 16 months and stayed the sentence.  On June 28, 1985, this court affirmed Hayes's conviction.  (*People v. Hayes* (1985) 169 Cal.App.3d 898 (*Hayes I*).)

After Senate Bill No. 1437 (Stats. 2018, ch. 1015, § 4) (Senate Bill 1437) took effect, Hayes filed on March 19, 2019 a petition for resentencing under section 1170.95.  Using a downloadable form, Hayes checked boxes 1, 2, and 3.[2]  Hayes did not check box 4 (requesting counsel) or box 5 or any of its

---

[2]     Box 1 states an information "was filed against me that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine."  Box 2 states, "At trial, I was convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine."  Box 3 states, "I could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019."

subparts, including the boxes that state, "I was not the actual killer" and "I did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree."

On May 30, 2019 the Office of the District Attorney filed an opposition to Hayes's petition. The prosecution took its statement of facts from *Hayes I*, and attached a copy of the opinion to its opposition. The prosecution devoted most of its brief to the contention that section 1170.95 is unconstitutional. The prosecution also argued Hayes had not presented a prima facie case of eligibility for resentencing because "he was the actual killer and was found to be a major participant who acted with reckless indifference to human life." The prosecution did not contend that Hayes was a direct aider and abettor, or that he was ineligible for relief because of the jury's true finding on the special circumstance of murder for financial gain.

On July 9, 2019, the trial court issued a minute order denying Hayes's petition without prejudice. The court noted the jury had convicted him of first degree murder and found true the principal-armed allegation as well as special circumstance allegations. The court quoted from *Hayes I*:

> " 'Hayes was armed with a .25 caliber automatic that had been given to him by [Randall Eugene] Ellis just before they went into the store. Once the robbery commenced, David Smith cooperated fully with appellants. While Hayes kept the gun on David Smith, Ellis began to empty the cash register. David Smith was face down on the floor. Then, in an extreme act of cowardice and cruelty, Hayes

4

> executed David Smith by shooting him three times in the back, from a distance of less than three feet.' "

Accordingly, the court concluded, Hayes had "not demonstrated eligibility for relief." The court stated Hayes "may file a new petition demonstrating eligibility for relief if he can establish that his case falls within the scope of the new law."

The court's July 2019 order also states the court had received and read "petitioner's request for counsel filed on June 24, 2019." The record on appeal does not contain a copy of that request. There is no indication the trial court ever ruled on Hayes's request or appointed counsel to represent him.

On September 9, 2019, Hayes filed a pleading entitled "Petition for Resentencing Pursuant to P.C. § 1170.95; Memorandum of Points & Authorities in Support Thereof." Hayes wrote the "new law" was "on point with [his] case factors and had this law been in effect when [he] went to trial, there is no way a jury would have returned a guilty verdict as to a charge of felony murder."

In his statement of facts, Hayes said he went to Monrovia "along with two acquaintances" "to acquire some marijuana and to visit a friend." Hayes continued,

> "When the friend could not be located, petitioner and the two acquaintances decided to return home. During the process, someone suggested to commit a robbery. When a location was found to commit the crime of robbery, the store clerk, David Smith, was ultimately killed in the ensuing robbery. Petitioner was charged with being the

actual shooter and also with committing great bodily injury to Mr. Smith. However, the jury could not convict petitioner of personally killing Mr. Smith."

Hayes contended it "has never been proven in a court of law that [he] was the actual killer of Mr. David Smith, for the jury could not reach a verdict as to petitioner personally using a firearm" or personally inflicting great bodily injury. Hayes attached as an exhibit what appear to be transcript pages from his sentencing. Nowhere in his pleading did Hayes explicitly deny having been the actual killer.

On October 9, 2019, the trial court issued another minute order denying Hayes's petition.[3] The court rejected Hayes's contention that he was neither the actual killer nor a major participant who acted with reckless indifference to human life. The court stated, "The evidence at trial established that petitioner was the actual killer." The court again quoted from *Hayes I* that Hayes executed the victim by shooting him three times in the back from close range as he lay face down on the floor. As for Hayes's assertion that the prosecutor conceded that Hayes did not act with reckless indifference, the court stated the prosecutor in fact "argued that petitioner far exceeded the reckless indifference standard." The court quoted the prosecutor: "Further, defendant Hayes did not act with reckless indifference to human life, but rather he took it a step further by acting with intentional [in]difference to human life, as he purposefully executed the victim."

---

[3]     The record on appeal does not contain any written opposition by the district attorney to Hayes's second petition.

6

### 2. *Proceedings on appeal*

Hayes appealed from the October 2019 order and we appointed counsel to represent him. On March 10, 2020, counsel filed a brief finding no arguable issues and asking us independently to review the record under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). The brief's statement of facts cited *Hayes I* as well as transcript pages of testimony in Hayes's superior court proceedings.[4] The brief states, "Appellant forced the store clerk, David Smith, to [lie] face down on the floor while Ellis emptied the cash register. . . . After co-defendant Ellis finished taking the money from the cash register, appellant shot Mr. Smith three times in the back, killing him."

Concurrently with the *Wende* brief, Hayes's counsel filed a request for judicial notice of the clerk's transcript from Hayes's 1983 trial, which—counsel said—had been "digitized" and "stored in the superior court's online data base [*sic*]." Counsel stated the trial court that denied Hayes's petition "was fully aware of the facts supporting [his] murder conviction." Those facts, counsel continued, "are contained in this Court's appella[te] decision, which is part of the appellate record in this case," citing *Hayes I*. Counsel listed specific page numbers from the transcript, stating, "The documents subject to this request for judicial notice provide direct evidence of these facts." Counsel added that, while the appellate court's opinion in *Hayes I* "constitutes hearsay," the pages from the preliminary

---

[4] Counsel's *Wende* brief states the transcripts are "from appellant's 1983 jury trial." In a later pleading, counsel stated the transcripts were of testimony given at Hayes's preliminary hearing.

7

hearing transcript of which appellant requested judicial notice "recite the same facts, but the source is sworn testimony."

On May 29, 2020, Hayes's counsel filed a Supplement to Appellant's Request for Judicial Notice, attaching copies of some of the superior court records of which Hayes requested notice.[5] In her accompanying declaration, counsel—referring to *Hayes I*—stated, "To the extent the statement of facts in the Court's decision constitutes hearsay, the attached documents provide testimony from witnesses at the preliminary hearing identifying appellant was the actual killer and facts about his involv[ement] in the robbery."

It is somewhat difficult to make out the preliminary hearing testimony of which Hayes requests notice, as the pages counsel attaches are single pages or excerpts of two or three pages each. Some of the testimony appears to be that of a Detective Spillman, who testified he interviewed a man named Edwin Eugene Jones. Spillman testified Jones told him "Michael Hayes had told [Jones] in complete detail how the robbery and the murder took place." Jones said Hayes told him

---

[5]     The record on appeal includes only a very few pages from the clerk's transcript in Hayes's 1983 trial: the information, minute orders dated January 11 and 18 reflecting the jury's verdicts in the guilt and penalty phases, a minute order of the sentencing, and the abstract of judgment. As discussed below, Hayes's counsel later submitted the jury instructions at our request. The rest of the clerk's transcript—including minute orders of opening statements, testimony, and closing arguments—are not available to us. Nor do we have any reporters' transcripts of the trial proceedings except for four pages of Hayes's sentencing that he submitted to the trial court with his second petition.

"Danny George was driving the car. It was a red, foreign car. That the other person involved in the robbery was Randall Ellis. That they had gone to Monrovia . . . . [W]hile in Monrovia the three of them decided to rob a liquor store. That is the first store they went to."

Again, although somewhat unclear, the transcript reflects that Spillman also interviewed Daniel George. George told Spillman, " 'I didn't know they were going to kill the guy. I thought they were going into the store and rob the guy and come out and we would get away.' " George said one of the other two men "was a guy by the name of Michael Hayes and he only knew the other person by the name of El." George told Spillman he and Hayes were brothers.

Spillman asked George

> "to relate the details of the evening. He said they had come to Monrovia first for the purpose of purchasing some joints. That they had gone to a street known as East Los Angeles Street in the City of Monrovia right off of Myrtle to see a Miss Smith. Said that she was not at home. So, as they were driving north on Myrtle, Michael Hayes asked if they were agreeable to make some easy money by robbing a store. He said he [George] and Ellis agreed they would participate."

Spillman testified he'd asked George "if he talked to Ellis and Hayes when they got back in the car. He said yes he did. He said Hayes told him that he shot the liquor store clerk. I am asking where the gun was. He said he didn't know. The last

time he saw it was that Michael Hayes had given it back to Michael [*sic*] Ellis and he still had the gun as far as he knew."

Spillman testified he also interviewed Randall Ellis after Ellis's arrest.  Ellis told Spillman:

> "on Saturday night [he'd] been with Danny George who was driving a red . . . Toyota.  I asked him who was with him.  He said Michael Wayne Hayes was with him.  I asked him where they went.  He said they had driven to Monrovia. . . .  He said they had gone to a house in Monrovia looking for some joints . . . .  He said nobody was home there so they decided to go back to Pasadena. [¶] As they turned on to the north-south street Michael Hayes said something to the effect 'Are you guys down for some easy money' or 'Are you agreeable to making some easy money tonight?'  He said that he was.  He says something about robbing a liquor store.  He said that he would go along with it and Danny George said he would go along with it. [¶] He said they started looking for a liquor store that was open. . . .  [T]hey stopped at this liquor store. . . .  He and Hayes went into the store, looked around in the store, left there, and went to a bar next door and left there and the place didn't look right. [¶] So, they left, got back in the car.  They continued toward Pasadena where they saw another liquor store that looked like it might be a good place to rob.  Danny George was driving the car

and parked on the street. [Ellis] said at that time he gave Michael Hayes a chrome plated, sterling .25 caliber automatic. He said he didn't want to take it in the store. . . . [¶] They went ahead and went into the store. He said that once inside the store Michael Hayes asked the clerk for a bottle of Night Train wine. He said the clerk came up from behind the counter to check for it and when he did Michael pulled a gun on him. Michael made the clerk go over to the corner of the store and he [Ellis] went up behind the cash register and tried to get the cash register to open, but couldn't do it. . . . Michael got the clerk up from the floor, brought him back to the cash register. The clerk opened the cash register by working the keys on the cash register. [¶] Michael took the clerk back to the corner, made the clerk lie down, said he [Ellis] was taking the bills out of the cash drawer . . . . Michael started shooting the clerk. [Ellis] said he ran out of the store and Michael was close behind him. [¶] [Ellis] jumped in the left side of the car in the rear. Michael got in the right rear. . . . They left, went back to Pasadena. He went home and he took the gun with him."

We granted Hayes's request for judicial notice of these transcripts on June 9, 2020.

In the meantime, on April 3, 2020, Hayes filed a handwritten pleading entitled "Appellant's Supplemental Brief."

11

Hayes noted the trial court never ruled on his request for appointment of counsel. Hayes stated he "was never found guilty of personally using a fire arm [*sic*] which shows it was never proven he was the actual killer or acted with reckless indifference or with the intent to kill, aided, abetted, . . . or assisted the actual killer."

After our Supreme Court granted review in *People v. Lewis* (2020) 43 Cal.App.5th 1128 (*Lewis*), review granted Mar. 18, 2020, S260598, *People v. Verdugo* (2020) 44 Cal.App.5th 320 (*Verdugo*), review granted Mar. 18, 2020, S260493, and *People v. Cornelius* (2020) 44 Cal.App.5th 54, review granted Mar. 18, 2020, S260410, we sent the parties a letter under Government Code section 68081 asking for briefing on three issues: whether the trial court properly considered the record of conviction; whether the court erred in finding Hayes (if not the actual killer) was a major participant who acted with reckless indifference to human life; and whether Hayes was entitled to appointed counsel.

On August 10, 2020, Hayes's counsel filed a supplemental opening brief. The brief included the same statement of facts as the *Wende* brief, citing again to the transcript pages and *Hayes I*. However—having previously asserted the trial court "was fully aware of the facts supporting [Hayes's] murder conviction"—counsel now argued the trial court was limited to the face of the petition in considering eligibility. Counsel stated Hayes "disagree[d]" with *Lewis*, *Verdugo*, and *Cornelius*. Counsel also contended the court erred in not appointing counsel for Hayes and by making the "factual finding" that he was a major participant who acted with reckless indifference to human life. Citing the "anomalous jury findings" in the case, counsel argued

12

appointed counsel could have "tr[ied] [to] show how the jury's inability to reach a decision on the personal gun use or infliction of great bodily harm allegations negated a finding that he was the actual killer."

In his respondent's brief, the Attorney General agreed with Hayes that the trial court erred in finding—at this stage of the proceedings—that he was a major participant in the robbery who acted with reckless indifference to human life. The Attorney General argued, however, that we should affirm the court's order because Hayes was the actual killer or, in any event, a direct aider and abettor.

In reply, Hayes's counsel reiterated the view that, in considering whether a petitioner has made a prima facie case, the court is limited to "the four corners of the petition." Counsel did not address the prosecution's argument that, even if Hayes were not the actual killer, he directly aided and abetted the shooter.

On March 16, 2021, we vacated the submission of the case and sent a second Government Code letter. We asked counsel to submit the jury instructions given at Hayes's trial and to file letter briefs on (1) whether Hayes's jury was instructed on direct aiding and abetting, and (2) whether the jury's true finding on the special circumstance of murder for financial gain meant the jury found Hayes had acted with the intent to kill.

On April 13, 2021, Hayes submitted the jury instructions, which the California Appellate Project had obtained from the superior court. On May 10, 2021, counsel filed simultaneous letter briefs. Hayes argues (1) the jury instruction on aiding and abetting impermissibly omitted any requirement that the jury find intent; and (2) the jury instruction on the financial gain special circumstance was insufficient because of "the overlapping

13

special circumstance of robbery-murder." The Attorney General argues "the jury's true finding on the financial gain special circumstance necessarily established that the jury found beyond a reasonable doubt that appellant—either as the actual killer or as a direct aider and abettor of the murder—acted with the intent to kill."

## DISCUSSION

Senate Bill 1437 "amend[ed] the felony-murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1(f). See *People v. Roldan* (2020) 56 Cal.App.5th 997, 1021, review granted Jan. 20, 2021, S266031.) Senate Bill 1437 added section 1170.95 to the Penal Code. It establishes a procedure by which a person convicted of murder under the felony-murder rule or the natural and probable consequences doctrine can seek to vacate that conviction and be resentenced on any remaining counts if he could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime. (Stats. 2018, ch. 1015, § 4. See also *Verdugo*, *supra*, 44 Cal.App.5th at p. 323.)

The parties agree the trial court erred in finding Hayes was a major participant in the underlying robbery who acted with reckless indifference to human life. As the Attorney General explains, "At the time of appellant's 1981 offense and 1983 trial, the applicable version of the felony-murder special circumstance statute did not require a finding that the defendant was an aider and abettor who was a major participant and acted with reckless

14

indifference to human life; instead, that requirement was first added in 1990 with the passage of Proposition 115." The Attorney General continues, "Thus, the jury's finding on the felony-murder special circumstance in appellant's case did not necessarily establish that appellant was a major participant who acted with reckless indifference to human life." (See generally *People v. Duchine* (2021) 60 Cal.App.5th 798, 815 [at prima facie stage, court may not evaluate evidence, engage in factfinding, or exercise discretion]; *People v. Harris* (2021) 60 Cal.App.5th 939, 958 [court erred in engaging in factfinding without issuing order to show cause and holding evidentiary hearing rather than evaluating record of conviction solely to determine whether it established petitioner's ineligibility as a matter of law], review granted Apr. 28, 2021, S267802.)

The Attorney General contends, however, that the trial court properly denied Hayes's resentencing petition because he was the actual killer and therefore ineligible for relief as a matter of law. The court—the Attorney General says—properly relied on the record of conviction, including the appellate opinion in Hayes's direct appeal, *Hayes I*, and the jury's true finding on the special circumstance allegation that Hayes intentionally killed the victim for financial gain. The Attorney General continues, "And in any event, even if appellant was not the actual killer, the jury's true finding on the financial gain special circumstance indicates that it concluded he was at least a direct aider and abettor."

Hayes contends "the jury's inability to decide if appellant used a gun against the store clerk undermines the trial court's finding that he was the actual killer." The Attorney General, citing *People v. Covarrubias* (2016) 1 Cal.5th 838, 890-891,

15

responds that this fact " ' "may show no more than jury lenity, compromise, or mistake, none of which undermines the validity of a verdict." ' "

As noted, in the statement of facts in his *Wende* brief as well as his supplemental opening brief, Hayes cited *Hayes I.* He also has submitted—and asked us judicially to notice—transcripts of preliminary hearing testimony that he proposed the robbery to his companions, went into the store with Ellis, and used the gun Ellis handed him to shoot the victim in the back as he lay face down on the floor. At the same time, Hayes argues the court—in considering whether the petitioner has made a prima facie case—is "limited to the factual allegations in his petition."

A number of appellate courts have held a court considering a resentencing petition properly may "examine readily available portions of the record of conviction to determine whether a prima facie showing has been made that the petitioner falls within the provisions of section 1170.95." (*Verdugo*, *supra*, 44 Cal.App.5th at p. 323; *Lewis*, *supra*, 43 Cal.App.5th at pp. 1137-1139 [record of conviction includes court of appeal's opinion on direct appeal]; *People v. Edwards* (2020) 48 Cal.App.5th 666, 671, 674-675 (*Edwards*) [same], review granted July 8, 2020, S262481; *People v. Soto* (2020) 51 Cal.App.5th 1043, 1055 [jury instructions are part of record of conviction], review granted Sept. 23, 2020, S263939; *People v. Perez* (2020) 54 Cal.App.5th 896, 905 [preliminary hearing transcript is part of record of conviction], review granted Dec. 9, 2020, S265254.) The issue is currently before our Supreme Court, which has granted review in *Lewis*. One issue the high court has designated is "May superior courts consider the record of conviction in determining whether a

16

defendant has made a prima facie showing of eligibility for relief under Penal Code section 1170.95?" (*Lewis*, S260598.) *Lewis* was argued in May and we are awaiting the court's ruling.

As for the Attorney General's contention that, in any event, Hayes was a direct aider and abettor, we don't know what the prosecution argued in closing, as no reporter's transcript of the trial has been provided to us. The jury instructions here raise more questions than they answer. The jury was instructed on aiding and abetting; however, at the time CALJIC No. 3.01 required only knowledge and said nothing about intent. In 1984 the California Supreme Court held this language to be inadequate because it did not require the aider and abettor to have the "intent or purpose of committing, encouraging, or facilitating the commission of the offense." (*People v. Beeman* (1984) 35 Cal.3d 547, 561.) The current version of the aiding and abetting instruction requires the People to prove "the defendant intended to aid and abet the perpetrator in committing the crime." (CALCRIM No. 401.)

Moreover, Hayes's jury was instructed with CALJIC No. 3.00, defining "principals," which included natural and probable consequences language: "One who aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and reasonable or probable consequences of any act that he knowingly aided or encouraged."

As for the special circumstance findings, the jury was instructed with the 1981 version of CALJIC No. 8.80, which covered both the financial gain special circumstance and the robbery-murder special circumstance. The instruction also told the jury, "If defendant MICHAEL WAYNE HAYES was not

17

the actual killer, it must be proved beyond a reasonable doubt that he intentionally aided, abetted, counseled, commanded, induced, solicited, requested or assisted the actual killer in the commission of the murder in the first degree before you are permitted to find the alleged special circumstance of that first degree murder to be true as to defendant MICHAEL WAYNE HAYES." The accompanying instruction (CALJIC No. 8.81.1), however, told the jury, "To find the special circumstances, referred to in these instructions as murder for financial gain, is true, each of the following facts must be proved: 1. That the murder was intentional, and 2. That it was carried out for financial gain."

Hayes contends this language permitted the jury to find the financial gain circumstance true as to him as long as *one* of the perpetrators (for example, Ellis) intended to murder the victim and the murder was done for financial gain. Hayes also notes the current version of this instruction (CALCRIM No. 720) includes a third element when a robbery-murder special circumstance also is charged: that the defendant "expected the financial gain to result from the death of [the victim]." The Bench Notes state that, when both financial gain and robbery-murder special circumstances are charged, "there is a risk that the jury will read the financial gain circumstance broadly, causing it to overlap with the robbery-murder special circumstance. (*People v. Bigelow* [(1984)] 37 Cal.3d [731,] 751.)"

In sum, it may well be that Hayes was the actual killer. If so, he is ineligible for resentencing under Senate Bill 1437 as a matter of law. (*People v. Tarkington* (2020) 49 Cal.App.5th 892, 895-896, 899 [as actual killer, petitioner is not entitled to resentencing], review granted Aug. 12, 2020, S263219; *Edwards,*

18

*supra*, 48 Cal.App.5th at p. 671 [same].)  If Hayes was not the actual killer, he may nonetheless be ineligible if he was a direct aider and abettor, or a major participant in the robbery who acted with reckless indifference to human life.  But on this record we cannot say he is indisputably ineligible as a matter of law.  Factfinding following an evidentiary hearing is necessary.

## DISPOSITION

We reverse the superior court's order denying Michael Wayne Hayes's petition to vacate his murder conviction and for resentencing under section 1170.95.  We remand the matter for the court to appoint counsel for Hayes, issue an order to show cause, and proceed in accordance with section 1170.95, subdivision (d).

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P. J.

LAVIN, J.

19